KNIPPENBERG, APPELLANT, v. GREENWOOD MINING & MILLING CO. ET AL., DEFENDANTS; BENNETTS, RESPONDENT.

(No. 2,640.)

(Submitted April 6, 1909.  Decided April 16, 1909.)

[101 Pac. 159.]

*Promissory Notes—Agency—Intention of Parties—Ambiguity— Parol Testimony—Admissibility.*

1. In an action to recover on a promissory note, signed by defendant and others with the word "Trustees" added to their signatures, defendant denied that he ever received any consideration for the note, and alleged that it had been executed by him as trustee of a mining company and not in his individual capacity, that the consideration expressed in it was received and enjoyed solely by the company, and

that it was so understood between defendant and the payee of the note at the time of its execution and delivery. At the trial the court, over objection of plaintiff, permitted defendant to introduce parol testimony in support of the affirmative allegations of the answer. *Held,* that the court's action was correct, the rule being, in such cases as this, that where a note is so ambiguous on its face as to leave it in doubt who is bound by it, parol testimony is admissible to solve the question.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by Henry Knippenberg against the Greenwood Mining & Milling Company and others. From a judgment for defendant T. J. Bennetts, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer,* for Appellant.

The admission of oral evidence showing that Bennetts was not personally liable, was error. (See *Burlingame* v. *Brewster,* 79 Ill. 515, 22 Am. Rep. 177; *Heffner* v. *Brownell,* 70 Iowa, 591, 31 N. W. 947.) The opinion in the latter case cites *Wing* v. *Glick,* 56 Iowa, 473, 41 Am. Rep. 118, 9 N. W. 384, which in passing on a similar note holds that it creates a personal liability upon the individuals signing the same, and parol evidence to show that it was intended as the contract of the company is incompetent. (See, also, *Coburn* v. *Omega Lodge,* 71 Iowa, 581, 32 N. W. 513.) An instrument containing nothing in the body of it to show that it is made by an agent on behalf of a principal, but signed ''A, agent for B,'' will be deemed the personal contract of A. (*Dawson* v. *Cotton,* 26 Ala. 591; *Tannatt* v. *Rocky Mountain etc. Bank,* 1 Colo. 278, 9 Am. Rep. 156; *Sturdivant* v. *Hull,* 59 Me. 172, 8 Am. Rep. 409; *Fiske* v. *Eldredge,* 78 Mass. 474; *McCandless* v. *Belle Plain Canning Co.,* 78 Iowa, 161, 16 Am. St. Rep. 429, 42 N. W. 635, 4 L. R. A. 396; *Tenbrook* v. *Ellars,* 71 Ill. App. 328; *Daniel* v. *Glidden,* 38 Wash. 556, 80 Pac. 811; *McBean* v. *Morrison,* 8 Ky. 545; *Collins* v. *Buckeye State Ins. Co.,* 17 Ohio St. 215, 93 Am. Dec. 612; *Davis* v. *England,* 141 Mass. 587, 6 N. E. 731; *Nunnemacher* v. *Poss,* 116 Wis. 444, 92 N. W. 375.)

The amended answer of Bennetts seeks to set up the affirmative defense of mutual mistake, but it fails to set forth facts sufficient to constitute the defense attempted; hence, evidence in general terms, that the note was given by mistake and not evincing the true intention of the parties, is incompetent and inadmissible.   (*Carr* v. *Dickson*, 58 Ga. 144; *Seeley* v. *Engell*, 17 Barb. (N. Y.) 530; 8 Cyc. 165.)

When an agent enters into a written contract upon which the name of his principal does not appear, he is personally liable. (Story on Agency, secs. 147, 155.)   The use of the word "agent" alone, without saying for whom he is agent, is not sufficient to relieve the agent from responsibility or to bind the principal.   (*Arnold* v. *Sprague*, 34 Vt. 402; *Ye Seng Co.* v. *Corbitt & Macleay*, 9 Fed. 425, 7 Saw. 368; *Armstrong* v. *Brolaski*, 46 Fed. 903; *Collins* v. *Buckeye State Ins. Co.*, 17 Ohio St. 215, 93 Am. Dec. 612.)

*Mr. R. L. Clinton*, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment in favor of the defendant Thomas J. Bennetts and an order denying a motion for a new trial.   The plaintiff, after stating the corporate character of the Greenwood Mining & Milling Company and the Hecla Mercantile and Banking Company, alleged as follows:

"(3) That on the seventh day of December, A. D. 1900, the said defendants, at the county of Silver Bow, in said state of Montana, for and in consideration of the sum of $11,000 to them loaned and paid by the said Hecla Mercantile & Banking Company, made, executed, signed, and delivered to said Hecla Mercantile & Banking Company their promissory note for the sum of $11,000, payable to said Hecla Mercantile & Banking Company or order, on or before one year after date, with interest thereon at the rate of eight per cent per annum, with attorney's fees of ten per cent of the amount of said note in

case suit should be commenced for the collection of said note, which note is in figures and words as follows, to-wit:

" '$11,000.00 .          Melrose, Montana, December 7, 1900.

" 'On or before one year after date, we promise to pay to the Hecla Mercantile and Banking Co., of Melrose, Montana, or order, Eleven Thousand Dollars, for value received, negotiable and payable at Bank in Glendale, in gold coin of the United States of America, of the present standard of weight and fineness, with interest thereon from date until paid, both before and after maturity, at the rate of eight per cent per annum, and ten per cent for attorney's fees if suit shall be instituted on this note for collection. The drawers and endorsers severally waive all exceptions of personal property allowed by the laws of the state, also waive presentment for payment, protest and notice of protest and non-payment of this note, and all defenses on the ground of any extension of the time of its payment that may be given by the holder or holders, to them or either of them.

" 'GREENWOOD MINING & MILLING CO.,
" 'Per D. T. HASKETT, President,
" 'ELMER L. KERN, Secty.
" 'THOMAS J. BENNETTS,
" 'CHAS. A. HARVEY,
" 'D. T. HASKETT,
" 'Trustees.

" ' [$2.20 in revenue stamps affixed thereon.] '

" (4) That afterward on the —— day of December, 1900, for value received, said Hecla Mercantile & Banking Company, by its said vice-president, duly indorsed, sold, and transferred to said plaintiff, Henry Knippenberg, said promissory note, no part of which has been paid, and said plaintiff is now the owner and holder thereof, and the whole thereof is now due, owing, and payable from said defendants to plaintiff.

" (5) That plaintiff duly notified defendants of said indorsement, sale, and transfer of said note, and that plaintiff was the owner and holder thereof, which indorsement is in words and

figures as follows, to-wit: 'Pay Henry Knippenberg, or order. The Hecla Mer. & Banking Co., Geo. B. Conway, V. Prest.' ''

The respondent answered, in effect, by denying that he made, executed, or delivered the note as set forth in the complaint, and denying that the copy or pretended copy of the note therein set forth was a true or correct copy of any note or instrument executed by him at the time alleged therein or at any other time or at all. The cause went to trial before the court sitting without a jury, and during the course of the trial the court, over plaintiff's objection, allowed defendant Bennetts to file the following amended answer:

''As to paragraph 3 denies that this defendant made, executed or delivered the note set forth by copy in said paragraph 3 of plaintiff's complaint, and denies that the said copy or pretended copy * * * is a true or correct copy of any note or instrument as executed by this defendant at the time alleged therein, or at any time, or at all.

'' (6) Denies that this defendant received any consideration for executing the said pretended note, but alleges the fact to be that the said note was executed by the defendant as trustee for said Greenwood Mining & Milling Company, and not otherwise, and that all the consideration expressed in said note was received, had, and enjoyed solely and exclusively by the said Greenwood Mining & Milling Company, and that this defendant at the time of the execution and delivery of said note was the duly elected, qualified, and acting trustee of the said Greenwood Mining & Milling Company and as such trustee, and not otherwise, made and delivered said note, and that in making and delivering said note this defendant acted only as such trustee for said Greenwood Mining & Milling Company in the execution and delivery thereof, and that this defendant did not execute or deliver said note as his individual note, and that it was understood and agreed by and between this defendant and payee of said promissory note at the time of the execution and delivery of same that said note was made, executed, and delivered by this defendant as the trustee of said Greenwood Mining & Milling Company, and not otherwise.''

Plaintiff objected to the introduction of any testimony in support of the affirmative allegations of the amended answer, but the court overruled the objection, and the ruling is assigned as error.   And afterward the court made the following findings of fact: "In this action, heretofore tried by the court, the court finds for defendant Bennetts, and concludes therefrom that plaintiff is not entitled to recover against him.   In view of the fact the note involved was in form a joint and several note, was changed (and uselessly if still intended to bind all signers personally) to a joint form only—'we,' the proper designation of a corporation note, was signed with the defendant's corporate name, and that Bennetts signed with the suffix 'Trustee,' I am of the opinion the note is so far ambiguous on its face that Bennetts could allege and prove by parol that the parties knew and intended it was not his note, but the company's only, so signed by Bennetts as trustee out of abundant caution to make it so appear.   *   *   *   The evidence is conclusive it was not intended by the parties to the note that Bennetts should be bound personally and that it was intended as only the company's note, and that Knippenberg procured this to be done." Judgment was entered in accordance with said findings in favor of respondent Bennetts, and the plaintiff appeals as aforesaid. In said judgment the court incorporated the following additional findings and conclusions: "And the court finds in favor of the defendant Thomas J. Bennetts, and against the plaintiff, Henry Knippenberg, that the evidence is conclusive; that it was not intended by the parties to the note that the said Thomas J. Bennetts should be bound personally; that it was intended only as the note of the defendant company the Greenwood Mining & Milling Company, and that the said promissory note mentioned in said complaint was signed by the said Thomas J. Bennetts as trustee to bind the defendant company, and that the parties to this suit knew and intended that it was not the note of the said Thomas J. Bennetts, but the note of the Greenwood Mining & Milling Company only; and that the plaintiff is not entitled to recover against the defendant Thomas J. Bennetts."

It is contended that the affirmative allegations of the amended answer are not sufficient to constitute a defense, and that no parol testimony was admissible in support thereof.  Counsel for the appellant, after calling attention to the confusion created by the different holdings of the courts on the subject in controversy, say in their brief: "Unless each case can be justified upon a true application of some recognized rule of law, then the books are full of opinions too irreconcilable to be of assistance in any given case."  We quite agree with counsel.  An examination of the authorities discloses several well-defined classes of cases, and the confusion has doubtless arisen where it has become necessary to apply the law to cases which, in the facts, bear some relation to the different classes.  While counsel for the appellant who tried the cause in the district court was not able to be present at the argument, he has filed a brief which bears evidence of a most exhaustive and painstaking research of the authorities.  One line of cases gives emphasis to the question whether the promise is made in the body of the note in the principal's name (see 7 Cyc. 551), while the principle applied in other jurisdictions is that instruments of this nature will always be construed as the parties made them without the aid of extrinsic evidence (*Scanlan* v. *Keith,* 102 Ill. 634, 40 Am. Rep. 624).  Mechem in his work on Agency, section 443, says: "To extract general principles from these cases whose conflict is so great as to amount, in the language of a recent case, almost to anarchy, is manifestly difficult.  It will be obvious that the question is of importance in two classes of cases: (1) Those involving the rights of the immediate parties to the instrument only.  (2) Those involving the rights of third persons.  Respecting this question, however, these general rules may be evolved:

" (I) Where the paper on its face is the undertaking of the agent only, no reference being made on its face to representative capacity, and where the paper on its face is unmistakably the principal's, parol evidence will not be received in the one case to exonerate, and in the other to charge the agent.

"(II) But where the paper bears on its face some reference to a principal, or some appellation indicating representative character, while it is undoubtedly true that the mere addition of the word 'agent,' 'trustee,' 'treasurer,' and the like, or the mere recital in the body of the instrument that the person signing is such agent, treasurer, or trustee of a principal named or unnamed, is, as has been seen, to be regarded *prima facie* as *descriptio personæ* merely, and not as characterizing the act as one done in a representative capacity; and, while it is also true, as a general rule, that parol evidence is not admissible to exonerate an agent from a contract into which he has personally entered, yet it is believed that the preponderance of authority will warrant the statement of the rule that: (1) Between the immediate parties to a bill or note parol evidence is admissible to show (a) that, by a course of dealing between the parties, that form of execution has become to be the recognized and adopted form by which the obligation of the principal is entered into; or (b) that the instrument was to the knowledge of the parties intended to be the obligation of the principal and not of the agent, and that it was given and accepted as such; (c) that an instrument which is so ambiguous upon its face as to render it uncertain who was intended to be bound was known to be intended to be the obligation of the principal.  (2) Between one of the original parties and a third party such evidence is admissible to make either of the lines of proof mentioned above: (a) Where the third person is not a *bona fide* holder; or (b) where the instrument bears sufficient evidence upon its face, or is so ambiguous, as to fairly put a reasonably prudent man upon inquiry.  As to this last subdivision it may be said that the mere addition of the word 'agent,' 'trustee,' etc., without disclosing the principal, is not sufficient to make third persons chargeable with notice of any representative relation of the signer; but the form of executing may be such as to well awaken the suspicion of third persons."

Professor Wigmore, in his work on Evidence, section 2444, page 3449, says: "The question whether one who signs as 'agent' or 'president' or 'guardian' is personally liable seems to

be mainly a question of interpretation.  *  *  *  The question thus becomes one of the construction of the document.''

There are several matters advanced in the brief of counsel for the appellant which ·are not pertinent to the main question involved.  Considerable space is devoted to a discussion of an agent's authority to bind his principal, but no such question is involved here.  No claim is made that the Greenwood Mining & Milling Company was not bound.  In fact, it was made a party defendant in this action and suffered default.  Neither is any question of undisclosed principal or unauthorized assumption of authority by an agent involved.  The court found the evidence to be conclusive that it was not intended by the parties that Bennetts should be bound personally, that the note was intended to be that of the company only, and that Knippenberg procured its execution in the manner indicated.  No significance attaches to the fact that mistake in execution is not pleaded or shown.  The defense does not rest on that ground.  The court having found that Knippenberg procured the arrangement to be made as claimed by Bennetts (and there is ample testimony to support it), he cannot now be heard to say that, unless Bennetts had authority to bind the company, he became personally liable.  The question here is: Is the note sufficiently uncertain on its face as to who was intended to be bound thereby to warrant the court in receiving parol evidence of the circumstances surrounding its execution?  We think an affirmative answer must be given.

This court in *Gerber* v. *Stuart*, 1 Mont. 172, laid down the rule thus: ''While it appears on examination of the authorities, especially the older ones, that the addition to a signature of 'agent,' 'president,' 'superintendent,' and similar words has been held to be mere description of the person, and not of the capacity in which the party acted, the modern rule seems to be that, if from the whole instrument it appears that the party intended to act for and bind his principal, the principal and not the agent will be bound, and that, where the addition or description is so inartificially expressed as to leave it in doubt, or ambiguous, from the face of the instrument, evidence *aliunde*

will be admitted to explain and show the actual intention of the parties.'' Some claim was made in the *Gerber Case* that the defendant by mistake failed to sign "as" manager "for" the company; but the basis of the decision, as we read it, is that there was enough on the face of the note to raise the question, and make it uncertain, who was intended to be bound.

In the case of *Metcalf* v. *Williams,* 104 U. S. 93, 26 L. Ed. 665, the court said: ''The bank was requested by two persons, who sign themselves as officers, one as vice-president and the other as secretary, to pay a certain sum. Whether they made this request as officers or as individuals is ambiguous, to say the least. It is evident that an inquiry into the circumstances of the case might render it certain which was intended. * * * Where a person acts merely as agent of another, and signs papers in that capacity, that is, signs them as agent, and the party with whom he deals has full knowledge of his agency and of the principal for whom he acts, an express disclosure of the principal's name on the face of the papers, or in the signature, is not essential to protect the agent from personal responsibility.'' (See, also, *Mechanics' Bank* v. *Bank of Columbia,* 5 Wheat. 326, 5 L. Ed. 100.)

In the case of *Kean* v. *Davis,* 21 N. J. L. 683, 47 Am. Dec. 182, it was held that ''a bill of exchange signed John Kean, President Elizabethtown & Somerville R. R. Co., leaves it ambiguous, on the face of it, whether John Kean, individually, or the company is the drawer,'' that without any explanatory proof Kean individually would be considered the drawer of the bill, but that evidence might be introduced to explain which of the two doubtful constructions was the intention of the parties. (See, also, *Hicks* v. *Hinde,* 9 Barb. 528.)

In *Means* v. *Swormstedt,* 32 Ind. 87, 2 Am. Rep. 330, the court said: ''We know that to hold the letters 'Sec'y' as intended to be 'a description of the person' would be simply a legal fiction, false in fact. It would simply amount to rejecting the words as surplusage.''

The supreme court of Mississippi in *Hardy* v. *Pilcher,* 57 Miss. 18, 34 Am. Rep. 432, said: ''Ordinarily, no extrinsic testi-

mony of any kind is admissible to vary or explain negotiable instruments. Such paper speaks its own language, and the meaning which the law affixes to it cannot be changed by any evidence *aliunde*. One of the few exceptions to this rule is, where anything on the face of the paper suggests a doubt as to the party bound, or the character in which any of the signers has acted in affixing his name, in which case testimony may be admitted between the original parties to show the true intent.''

In *Carpenter* v. *Farnsworth*, 106 Mass. 561, 8 Am. Rep. 360, it was said: ''The court has always laid hold of any indication on the face of the paper, however informally expressed, to enable it to carry out the intentions of the parties.'' (See, also, *Haile* v. *Pierce*, 32 Md. 327, 3 Am. Rep. 139; *McClellan* v. *Reynolds*, 49 Mo. 312.)

The point is made by appellant that there is no allegation in the amended answer that he, Knippenberg, knew of the understanding between the parties at the time the note was executed. This is true; but no such objection was urged at the trial, and the testimony conclusively shows that plaintiff, who was president of the Hecla Mercantile & Banking Company at the time, was the person who supervised and directed the entire transaction; that ''the reason the note was signed by Bennets, Harvey, and Haskett on the lower left-hand corner was because it was the wish of Mr. Knippenberg that the trustees should sign the note to make it a legal note on the part of the Greenwood Mining & Milling Company.'' The record shows that the sole question presented to the district court was whether parol evidence was admissible to show the understanding and agreement between the parties at the time of the execution of the note.

We think that *Gerber* v. *Stuart, supra,* was decided according to principles which are sound in law and equitable in their application, and we therefore have no hesitancy in following it. Under the facts disclosed by the record, it would be unconscionable to allow the plaintiff to collect the amount of this note from Bennetts. We are therefore of opinion that the district court

correctly decided the case, and the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.